UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
------------------------------------------------------------------------------X

BRIAN WHITE,                                              Civil Action No.:
Plaintiff,

                -against-                          **COMPLAINT**

CSX INTERMODAL TERMINALS, INC.,                           Plaintiff Demands A
JONATHAN LOWE (individually), and                         Trial By Jury
RYAN GOMEZ (individually).

Defendants.
------------------------------------------------------------------------------X

      Plaintiff, BRIAN WHITE, as and for his Complaint against the above Defendants respectfully alleges upon information and belief as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to American with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq ("ADA"), Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), under the laws of the Commonwealth of Pennsylvania, and under the Philadelphia Fair Practices Ordinance, § 9-1100 *et. seq.* ("PFPO") and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against, retaliated against, and terminated by his employer due to his disability association, race, color and national origin.

### JURISDICTION AND VENUE

2. This action involves a Question of Federal Law under 42 U.S.C. § 12101 et. seq and Title

VII of the Civil Rights Act of 1964. The Court also has supplemental jurisdiction over the State Causes of Action.

3. Venue is proper in this district based upon the fact that Plaintiff was employed by Defendants within Philadelphia County, within the Eastern District of Pennsylvania, and the discriminatory actions occurred within the Philadelphia County, within the Eastern District of Pennsylvania.

4. On or about January 17, 2017, Plaintiff filed charges with the Equal Employment Opportunity Commission (herein after the "EEOC") against Defendants as set forth herein.

5. On or about December 1, 2017, the EEOC issued Plaintiff a Right to Sue Letter.

6. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

## PARTIES

7. That at all times relevant hereto, the Plaintiff Brian White resides in Philadelphia County, in the Commonwealth of Pennsylvania.

8. Defendant CSX INTERMODAL TERMINALS, INC., is a foreign business corporation duly existing under the laws of the State of Delaware, and authorized to do business in the Commonwealth of Pennsylvania.

9. CSX INTERMODAL TERMINALS, INC., (hereinafter collectively referred to as Defendant and "CSX") operate a rail yard located at 3400 S. Christopher Columbus Blvd., Philadelphia, PA 19148.

10. Defendants CSX website states, "Diversity, Inclusion, Engagement: CSX prides itself on fostering an inclusive culture where every employee is fully engaged to maximize his or her potential."

11. At all material times, Defendant RYAN GOMEZ (hereinafter referred to as Defendant and "GOMEZ") is an employee for Defendants CSX.

12. At all material times Defendant GOMEZ is employed as an Operations Manager for Defendant CSX.

13. At all times material, Defendant GOMEZ held supervisory authority over Plaintiff.

14. At all material times, Defendant LOWE is employed as a(n) Operations Manager for Defendant CSX.

15. At all times material Defendant LOWE held supervisory authority over Plaintiff.

## MATERIAL FACTS

16. In or around March 18, 2000, began working for Defendants as an Intermodal Service Worker.

17. At or around the time of his hire, Plaintiff explained to Defendants that his wife suffered from a number of serious health conditions. As a result, Plaintiff had to be able to utilize his cellular phone, or have it available in case an emergency arose with his wife.

18. Plaintiff's wife suffers from End Stage Renal Disease (ESRD). ESRD is a chronic kidney disease that requires regular hemodialysis treatment or kidney transplant in order to live. Plaintiff's wife requires hemodialysis three times per week due to the stage of her condition.

19. Plaintiff's wife also suffers from other comorbidities including hypertension, anemia, renal bone disease, sleep apnea, spinal fusion after osteomyelitis (wheel chair bound) and cardiomyopathy.

20. Due to the fragile health condition of Plaintiff's wife, he had to be available by telephone in case an emergency arose with her multiple health conditions.

21. On or around the beginning of 2016, Plaintiff obtained intermittent leave pursuant to the Family Medical Leave Act (FMLA).  Plaintiff utilized his intermittent FMLA if his wife's health problems required him to do so.

22. On or around April 27, 2016, Defendant LOWE reported, and took formal action against Plaintiff because he witnessed Plaintiff pulled over and parked in his company Hostler vehicle.  Plaintiff was using his cellular telephone.

23. At the time Defendant LOWE witnessed Plaintiff using his cell phone, Plaintiff had the truck pulled over out of the way of traffic, and had his parking brake on, because his truck was hooked up to a container.

24. Plaintiff was at no time using his cell phone while operating the company vehicle.

25. Defendant LOWE who was riding in the passenger side of another vehicle, traveling in the direction toward Plaintiff, made the driver of Defendant LOWE's vehicle stop.

26. Defendant LOWE then exited his vehicle and proceeded toward Plaintiff.

27. Defendant LOWE asked Plaintiff if he had possession of a cell phone.  Plaintiff admitted that he did.  Plaintiff then explained to Defendant LOWE that he received an emergency message about his wife's health.

28. Plaintiff's wife had to be rushed from the dialysis center to the hospital.  Her heart rate crashed two times, and she had to be administered a certain amount of saline, or she would have died.  This was the message that Plaintiff had just received.

29. Defendant LOWE proceeded to tell Plaintiff that he was not allowed to use his cell phone, and that anyone contacting Plaintiff about an emergency could call the administration building.  The administration building would in turn call Plaintiff to the office to take the telephone call.

30. This was not a reasonable accommodation in light of Plaintiff's wife's medical condition. In an instance such as this one, Plaintiff might have to make a determination on a course of action regarding his wife's life in just moments.

31. Plaintiff drove at times, nearly three miles from the administrative building. If Plaintiff were at the far end of the rail yard, a substantial amount of time could pass between the administration receiving the call, then sending a radio message to Plaintiff and finally Plaintiff traveling to the administration office to retrieve the telephone call.

32. Defendant LOWE still told Plaintiff that this was the procedure that he must follow. Defendant LOWE did tell Plaintiff that a caller could bypass the automated system at the administration office by dialing "Option 4."

33. Plaintiff protested, but was written up despite the fact that his cell phone usage was directly related to his wife's medical condition.

34. On or around May 2, 2016, Defendants put out a Memo. The Memo indicated that individuals calling into the administration office would no longer be able to dial "Option 4" to bypass the automated system. Anyone calling Defendants would be forced to go through the electronic, automated options to speak with someone.

35. By eliminating the bypass option, but forcing Plaintiff's wife or medical providers to call the company rather than Plaintiff's cell phone in a medical emergency the company failed to accommodate Plaintiff.

36. On or around May 9, 2016, Plaintiff provided Defendants with a letter from Dr. Rakesh Gulati, M.D. The letter stated in substance that Plaintiff's wife's unstable clinical condition due to her disability made it essential for the medical providers to be able to reach Plaintiff via cell phone at a moments notice.

37. The necessity is that Plaintiff's wife at times has adverse emergency occurrences due to her treatment.

38. Defendants CSX did allow managers, contract vendors, and other authorized personnel to utilize cell phones while they worked. Plaintiff's request for an accommodation was reasonable in light of the fact that other people were using their cell phones in the same area as Plaintiff.

39. Defendant CSX further retaliated against Plaintiff by foricing him to attend a disciplinary hearing following the write-up for using his cellular telephone.

40. A few weeks later, Plaintiff witnessed Defendant Jonathan LOWE in his company vehicle, stopped in the middle of the driving area, not pulled over out of the way of traffic, using his cellular telephone.

41. Throughout the summer of 2016, Defendants continued to retaliate against Plaintiff because of his complaints that Defendants were at all times failing to accommodate his request to use his cell phone.

42. Defendants also reprimanded Plaintiff on a few occasions because he was unable to work over time three times per week. Plaintiff had to leave work on time those occasions because he had to pick his wife up from her dialysis treatment.

43. On or around October 25, 2016, Defendant GOMEZ took action against Plaintiff because Plaintiff allegedly wore his wedding ring while working, which was prohibited, and was not wearing a seat belt while operating a company vehicle.

44. In addition, Plaintiff explained to Defendants that he and his wife were part native American and that wearing the wedding ring was a cultural requirement. Plaintiff further stated that he would speak to his tribal elders about the issue.

45. However, Plaintiff's vehicle was again in park, and he was not driving at the time.

46. Plaintiff deliberately parked and was about to exit the vehicle, which is why his seat belt was removed. Once Plaintiff exited the vehicle, he removed a work glove that he had been wearing over his ring, so that he could shake Arthur Jackson's hand.

47. Mr. Jackson is a safety, risk management professional for Defendants CSX.

48. Multiple other workers wore gloves over their wedding rings while they worked. Plaintiff was deliberately singled out for these policy violations in retaliation for his ongoing complaints about the failure to accommodate due to his wife's disability and due to the fact that he had intermittent leave under the FMLA.

49. Plaintiff was taken out of service on or around November 4, 2016.

48. Upon information and belief, Defendant GOMEZ has treated White/Caucasian employees differently than Black/African-American employees.

49. By means of example, Defendant GOMEZ would discipline Black/African-American employees more severely by sending them home instead of disciplining White/Caucasian employees.

50. Plaintiff was awaiting a policy hearing based on the newest allegations. Defendants at all times continued to delay the hearing. The hearing was initially scheduled for November 15, 2016, then it was delayed until December 1, 2016.

51. Plaintiff did not receive a determination of the hearing until December 29, 2016, nearly two (2) months after the violation, and while being out of service with no pay.

52. On or around December 29, 2016, Defendants unlawfully and wrongfully terminated Plaintiff due to his request for accommodation related to his wife's disability and his intermittent leave under the FMLA.

53. That as a result of Defendants' conduct, the Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

54. Plaintiff suffers from regular panic attacks and nightmares relating to Defendants' and Defendants' employees conduct. Plaintiff is unable to sleep or eat.

55. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

56. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

57. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

58. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

59. The above are just some of the examples of the discrimination and retaliation to which Defendants subjected Plaintiff.

60. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

### AS A FIRST CAUSE OF ACTION
### UNDER FEDERAL LAW
### 42 U.S.C. Section 1981

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. 42 USC Section 1981 states in relevant part as follows:

    a. (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all

laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

63. Plaintiff, as a member of the Black and/or African-American race, was discriminated against by Defendants because of his race as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

64. Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendants' unlawful employment practices.

**AS A SECOND CAUSE OF ACTION
FOR RETALIATION FOR EXERCISING RIGHTS UNDER
THE FAMILY MEDICAL LEAVE ACT**

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

66. §2612 of the FMLA states in pertinent part:

(a) In General

(1) Entitlement to leave

Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 work weeks of leave during any 12-month period of one or more of the following:

(A) Because of the birth of son or daughter of the employee and in order to care for such son or daughter.

      (B) Because of the placement of a son or daughter with the employee for adoption or foster care.

      (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

      (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

67. § 2615 of the Act states as follows: Prohibited acts

  (a) Interference with rights

    (1) Exercise of rights:

      It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

    (2) Discrimination:

      It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

  Plaintiff was entitled to intermittent FMLA leave to assist in caring for his wife who suffers from End Stage Renal Disease (ESRD).

68. Defendants unlawfully discriminated against and harassed Plaintiff in retaliation for his election to use intermittent leave under the FMLA.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

69. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

70. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

71. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

72. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability association.

73. As such, Plaintiff has been damaged as set forth herein.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION
## UNDER THE AMERICANS WITH DISABILITIES ACT

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

75. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

76. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter IV, Section 12203, Discrimination [Section 102] states:

   a. "(a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
   b. (b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

77. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff because of his disability association.

78. As such, Plaintiff has been damaged as set forth herein.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (NOT AGAINST INDIVIDUAL DEFENDANTS)

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

80. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

81. SEC. 2000e-2. *[Section 703]* states as follows:

(a) Employer practices

   It shall be an unlawful employment practice for an employer -
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or

otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

82. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq., by discriminating against Plaintiff because of his race, color, and national origin.

### AS A SIXTH CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (NOT AGAINST INDIVIDUAL DEFENDANTS)

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

85. Defendants retaliated against Plaintiff because he opposed Defendants' unlawful employment practices.

### AS A SEVENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such

individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

88. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his medical disability.

89. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## AS AN EIGHTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW

90. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

91. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

92. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A NINTH CAUSE OF ACTION
## FOR AIDING & ABETTING UNDER STATE LAW

93. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

94. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

95. Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS A TENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE

96. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

97. The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms,

conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

98. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's disability.

99. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

### AS AN ELEVENTH CAUSE OF ACTION
### FOR RETALIATION UNDER THE
### PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE

100. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

101. The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder"

102. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Philadelphia, Pennsylvania
       February 28, 2018

**DEREK SMITH LAW GROUP, PLLC**

By: _____
Samuel C. Wilson, Esq.
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
(215) 391-4790