# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN WHITE,                                          ) | |
| ) | |
| ) | |
| Plaintiff,                          ) | |
| )  No. 2:18-cv-00884 | |
| ) | |
| v.                                                    ) | |
| ) | |
| CSX INTERMODAL TERMINALS, INC.,          ) | |
| JOHNATHAN LOWE, *individually*,             ) | |
| and RYAN GOMEZ, *individually*,             ) | |
| ) | |
| ) | |
| Defendants.                         ) | |
| ——————————————————————  ) | |

## DEFENDANTS CSX INTERMODAL TERMINALS, INC., JONATHAN LOWE, AND RYAN GOMEZ'S REPLY MEMORANDUM OF LAW IN <u>SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

Thomas R. Chiavetta
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3939 (Telephone)
(202) 626-1700 (Facsimile)
tchiavetta@jonesday.com

James S. Urban
Sarah L. Thompson
JONES DAY
500 Grant St., Suite 3100
Pittsburgh, PA 15219
(412) 394-7906 (Telephone)
(412) 394-7959 (Facsimile)
jsurban@jonesday.com

Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

I. SUMMARY OF UNDISPUTED MATERIAL FACTS .......................................... 3

    A.    The Parties ................................................................................................. 3

    B.    Plaintiff's Use of FMLA Leave ............................................................... 3

    C.    CSXIT's Safety Rules ............................................................................... 4

    D.    CSXIT's Disciplinary Policy and Procedures ......................................... 4

    E.    White's 4-Day Suspension ....................................................................... 5

    F.    White's Dismissal .................................................................................... 6

    G.    Treatment of Similarly-Situated Employees ........................................... 8

    H.    White's EEOC Charge .............................................................................. 8

    I.    White's Reinstatement .............................................................................. 8

II. ARGUMENT ................................................................................................... 9

    A.    Most of Plaintiff's Claims Must Be Dismissed On Procedural Grounds ............. 9

        1.    Plaintiff's claims regarding discipline assessed to him in 2014 were made for the first time in opposition to summary judgment ........... 10

        2.    Plaintiff did not exhaust administrative remedies for claims challenging discipline assessed prior to 2016 ........................................... 10

        3.    Plaintiff's FMLA claims regarding discipline assessed before 2016 are time-barred .................................................................................... 11

    B.    Plaintiff Cannot Establish that Defendants Discriminated or Retaliated Against Him ............................................................................................. 11

        1.    Plaintiff cannot establish that his 4-day suspension was discriminatory or retaliatory ................................................................. 12

        2.    Plaintiff cannot establish that his dismissal was discriminatory or retaliatory ........................................................................................... 18

    C.    The Claims Against Lowe and Gomez Should Be Dismissed ............................ 24

III. CONCLUSION .............................................................................................. 25

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Alinoski v. Musculoskeletal Transplant Found., Inc.*,
679 F. App'x 224 (3d Cir. 2017) ..........................................................................14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...............................................................................................8

*Baer v. Chase*,
392 F.3d 609 (3d Cir. 2004) ...........................................................................15, 22

*Ballard v. Mastery Charter Sch.*,
No. 12-2418, 2012 WL 6562783 (E.D. Pa. Dec. 14, 2012) (Rufe, J.) ...................9

*Barzanty v. Verizon PA, Inc.*,
361 F. App'x 411 (3d Cir. 2010) ............................................................................9

*Billet v. CIGNA Corp.*,
940 F.2d 812 (3d Cir. 1991) .................................................................................19

*Boyle v. Penn Dental Med.*,
689 F. App'x 140 (3d Cir. 2017) ..........................................................................19

*Brewer v. Quaker State Oil Ref. Corp.*,
72 F.3d 326 (3d Cir. 1995) ...................................................................................15

*Capps v. Mondelez Glob., LLC*,
847 F.3d 144 (3d Cir. 2017) ...........................................................................11, 19

*Carvalho-Grevious v. Del. State Univ.*,
851 F.3d 249 (3d Cir. 2017) .................................................................................23

*Celotex v. Catrett*,
477 U.S. 317 (1986) ...............................................................................................8

*Connelly v. Lane Const. Corp.*,
809 F.3d 780 (3d Cir. 2016) .................................................................................10

*Erdman v. Nationwide Ins. Co.*,
   582 F.3d 500 (3d Cir. 2009)............................................................................1, 16

*Fleet v. CSX Intermodal, Inc.*,
   No. CV 17-3562, 2018 WL 1217156 (E.D. Pa. Mar. 8, 2018)..................................9

*Fleet v. CSX Intermodal, Inc.*,
   No. CV 17-3562, 2018 WL 3489245 (E.D. Pa. July 18, 2018)........................23, 24

*Fuentes v. Perskie*,
   32 F.3d 759 (3d Cir. 1994)..........................................................................12, 15

*Johnson v. Cmty. Coll. of Allegheny Cty.*,
   566 F. Supp. 2d 405 (W.D. Pa. 2008)..................................................................9

*Jones v. Sch. Dist. of Philadelphia*,
   198 F.3d 403 (3d Cir. 1999).............................................................................11

*Joseph v. Cont'l Airlines, Inc.*,
   126 F. Supp. 2d 373 (E.D. Pa. 2000) (analyzing Section 1981 and PFPO
   claims consistently with Title VII) ......................................................................11

*Lombard v. Lassip, Inc.*,
   No. CV 17-964, 2017 WL 6367956 (E.D. Pa. Dec. 13, 2017) ...............................24

*McCoy v. WGN Cont'l Broad Co.*,
   957 F.2d 368 (7th Cir. 1992) ............................................................................15

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)........................................................................................11

*McInerney v. Moyer Lumber & Hardware, Inc.*,
   244 F. Supp. 2d 393 (E.D. Pa. 2002) ...................................................................9

*Mease v. Wilmington Tr. Co.*,
   726 F. Supp. 2d 429 (D. Del. 2010).....................................................................13

*Miller v. Thomas Jefferson Univ. Hosp.*,
   908 F. Supp. 2d 639 (E.D. Pa. 2012), *aff'd*, 565 F. App'x 88 (3d Cir. 2014)
   (analyzing Section 1981 claims consistently with Title VII)....................................11

*Moore v. Shinseki*,
   487 F. App'x 697 (3d Cir. 2012) ........................................................................14

*Newman v. GHS Osteopathic, Inc.*,
    60 F.3d 153 (3d Cir. 1995).................................................................10

*Norman v. Kmart Corp.*,
    485 F. App'x 591 (3d Cir. 2012) ..................................................12

*Orsatti v. New Jersey State Police*,
    71 F.3d 480 (3d Cir. 1995)..............................................................8

*Ruff v. Temple Univ.*,
    122 F. Supp. 3d 212 (E.D. Pa. 2015) ..............................................11

*Texas Dep't of Community Affairs v. Burdine*,
    450 U.S. 248 (1981).......................................................................11

*Vaughan v. Boeing Co.*,
    229 F. Supp. 3d 339 (E.D. Pa. 2017), *aff'd*, 733 F. App'x 617 (3d Cir. 2018) ......................11

*Walden v. Saint Gobain Corp.*,
    323 F. Supp. 2d 637 (E.D. Pa. 2004) (Rufe, J.) .............................17, 18

*Yu v. McGrath*,
    No. 11-cv-5446, 2014 WL 1276244 (D.N.J. Mar. 27, 2014), *aff'd*, 597 F.
    App'x 62 (3d Cir. 2014).................................................................16

## Statutes

43 Pa. Stat. Ann. § 955(e) .................................................................24

29 U.S.C. § 2617(c) ...........................................................................10

42 U.S.C. § 1981, Title VII...............................................................9, 10

ADA...........................................................................................9, 10, 11

DEREK SMITH LAW.........................................................................26

FMLA ............................................................................................ passim

Pa. Code § 9-1103(1)(h) .....................................................................24

Pennsylvania Human Rights Act .........................................................9

PFPO ..............................................................................................10

Philadelphia Fair Practices Ordinance .............................................................................9

PHRA ..........................................................................................................................9, 10

§ 1981 ...............................................................................................................................10

Title VII, the Americans with Disabilities Act ...............................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) .........................................................................................................8

Rule I-2 ............................................................................................................................17

Rule 37(a)..........................................................................................................................4

Rule 38 ..............................................................................................................................7

Rule A-34 ................................................................................................................. passim

Rule H-5(a) .....................................................................................................................17

Rule H-5(a) and I-2 ..........................................................................................................7

Plaintiff alleges that Defendants discriminated against based on his Native American race, his wife's disability, and his use of FMLA leave, by disciplining him for violating a safety rule on cell phones, and by dismissing him for two other safety violations. His claims have no merit. CSXIT's safety rules prohibit employees in Plaintiff's position from carrying or using cell phones at work, and he admits doing both of those things. He argues that his violation should have been excused, because his wife has a medical condition, and was having a medical emergency at the time he took the call. Regardless of whether Plaintiff believes his discipline was fair, however, he cannot show that it was discriminatory. CSXIT did not make any exceptions to its rule on cell phones, and has no legal duty to accommodate the medical needs of someone who does not work for them. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 510 (3d Cir. 2009). In addition, Plaintiff's 4-day suspension was consistent with the progressive discipline policy, which called for discipline of up to discharge for an employee with his record. Moreover, although Plaintiff claims that others who committed this violation were only counseled, he does not know where any of them stood under the progressive discipline policy, and thus cannot show that they were similarly-situated to him. Nor does the fact that managers and "approved personnel" were allowed to carry and use cell phones prove disparate treatment, because the rule that he was suspended for violating does not apply to managers, and because Plaintiff neither asked for nor received permission to carry or use his cell phone before he was caught with it – he was not "approved personnel."

Plaintiff's claim regarding his dismissal fares no better. Under CSXIT's progressive disciplinary policy, an employee who commits four or more "minor offenses" in less than three years can be dismissed. As of October 2016, Plaintiff had committed four minor offenses in less than three years, and was at the fourth and final step of the progressive discipline policy. On that

day, two CSXIT managers – Regional Safety Director Arthur Jackson and Defendant Ryan Gomez – observed Plaintiff driving his truck without wearing his seat belt, in violation of a safety rule. As Jackson approached White to discuss this violation, White removed his work gloves, revealing that he was wearing wedding rings, in violation of another safety rule. In accordance with its collectively-bargained disciplinary procedures, CSXIT charged White with these violations and held a hearing regarding them, after which White was dismissed.

As with his suspension, White claims that his dismissal was unfair, but he cannot show that it was discriminatory. White does not identify any employees who, like him, were actually caught wearing one wedding ring (let alone two) in full view of a manager. In addition, although White claims that some managers allowed wedding rings as long as they were hidden by work gloves, Regional Safety Director Jackson – the one who directed that charges be brought – was not one of those managers, and did not tolerate any employees breaking the safety rule.

White also cannot show that his dismissal was discriminatory, to the extent it relied on his violation of the rule requiring seat belts. White denies violating the rule; he claims that he removed his seat belt only after his truck was stopped and parked. However, White has not shown that any of the managers involved in the decision to charge or dismiss him did not honestly believe that he was not wearing his seat belt. Nor has White identified any employees similarly-situated to him who were treated better than him.

Besides not producing any evidence of disparate treatment, Plaintiff has not rebutted the evidence that he was treated the same as other employees. CSXIT dismissed at least five employees besides Plaintiff for committing a minor offense while at the final step of the progressive discipline policy. Plaintiff discounts these comparators, arguing that they are irrelevant because they did not work in Philadelphia like he did. However, these employees

were all subject to the same safety rules and governed by the same disciplinary policy as the

Plaintiff, and Plaintiff's discipline was decided on by managers outside of Philadelphia.  Thus,

while the burden of proof is on Plaintiff and not CSXIT, this evidence of equal treatment further

undermines Plaintiff's claim.  Plaintiff's discipline was consistent with the progressive

disciplinary policy and with the Company's treatment of other similarly-situated employees.  His

discrimination and retaliation claims fail, and summary judgment should be granted on them.

## I.      SUMMARY OF UNDISPUTED MATERIAL FACTS

### A.      The Parties

CSXIT provides intermodal shipping services, meaning that it uses two modes of

transportation—trucks and trains—to ship its customer's freight.  CSXIT operates several

intermodal terminals, including one in Philadelphia, Pennsylvania.  (Stipulated Material Facts

("Stip. Facts") (Dkt. No. 22) ¶ 1.)  Intermodal Service Workers ("ISWs"), including Plaintiff,

work in the Philadelphia Terminal and are responsible for, among other things operating trucks

and other equipment to move containers, and to load and unload them on or from trains and

trucks.  *Id.* ¶¶ 3-4.  White was employed at CSXIT's Philadelphia Terminal from April 6, 1999

until December 29, 2016.  *Id.* ¶2.  Defendants Jonathan Lowe and Ryan Gomez supervised

Plaintiff.  *Id.*  ¶¶ 2, 5.

### B.      Plaintiff's Use of FMLA Leave

In or around 2006, White applied for and received FMLA leave to care for his wife.  *Id.* ¶

8.  For the next 10 years, CSXIT allowed White to use FMLA leave whenever he asked to do so.

Ex. 1 (Deposition of Brian White) (hereinafter "White Dep.") 53:19-21, 103:13-16.  White

testified that nobody at CSXIT ever took any action against him for taking FMLA leave.  *Id.*

57:25-58:8; *see also id.* 55:14-16 (White never heard Lowe say anything negative about FMLA

leave); *id.* 55:14-16 (White had "no problem whatsoever" with how Gomez handled his FMLA leave).

### C.    CSXIT's Safety Rules

CSXIT has written safety rules.  *See* Ex. 2 (Safety Standard Operating Procedure ("SOP")).  CSXIT managers are responsible for ensuring that ISWs and other employees comply with these rules.  Ex. 1 (White Dep. 46:23-25.)  Failure to comply with safety rules can and does lead to disciplinary action.  Ex. 2 (SOP) p. 11.

### D.    CSXIT's Disciplinary Policy and Procedures

CSXIT's disciplinary policy classifies rule violations as either "minor," "serious," or "major."  Ex. 3 (Disciplinary Policy).  Minor offenses are defined as "[a]ll policy or rule violations that do not result in damage to equipment or property, and that are not otherwise identified as 'Serious' or 'Major.'"  *Id*. at 2.  Because the "focus" of the disciplinary policy is on "positive corrective action" and "not punishment," minor offenses are handled progressively, with maximum discipline at each step as follows: Step 1 – Counseling; Step 2 – 2-day suspension; Step 3 – 4-day suspension; and Step 4 – discipline up to discharge.  *Id*. at 4.  In determining an employee's standing under the policy, CSXIT uses a rolling three-year look-back period.  *Id*.  As a result, an employee who commits four or more minor offenses in less than three years may be discharged.  *Id*.; s*ee also* Ex. 4 (Griffin Decl.) ¶ 5.

White is a member of the Transportation Communications International Union ("TCU"), which has a collective bargaining agreement with CSXIT.  Stip. Facts ¶ 9.  The Disciplinary Policy and the applicable CBA each prohibit CSXIT from disciplining employees without first holding an investigation hearing, unless the employee waives this right and admits the offense. Ex. 3 (Disciplinary Policy); Ex. 5 (CBA) at Rule 37(a).  When a manager believes that a CSXIT employee has committed a rule violation, unless the violation is handled with counseling, CSXIT

issues a letter to the employee notifying him of the charges and scheduling a hearing regarding

them.  *See* Ex. 4 (Griffin Decl.) ¶ 6.  A CSXIT manager who was not involved in the decision to

charge the employee serves as the hearing officer and conducts the hearing.  *Id.*

      During the hearing, CSXIT presents testimony and evidence on the charges by calling

Company witnesses and introducing records.  *Id*.  The employee and his union representative can

cross-examine the Company's witnesses, and offer testimony and other evidence of their own.

*Id*.  After the hearing, the hearing officer in consultation with Labor Relations decides whether

and to what extent the employee should be disciplined.  *Id*.

      **E.**     **White's 4-Day Suspension**

      As of April 2016, White was at the fourth and final step of the progressive discipline

policy, having been cited for numerous minor offenses since 2014.[1]  *See* Ex. 6 (Plaintiff's

Disciplinary Record); *see also* Ex. 7 (Jan. 10, 2014 Letter) (counseling White for "sitting in a

hostler truck between W-2 and W-3 tracks without [his] safety glasses on"); Ex. 8 (Mar. 26,

2014 Letter) (assessing a 2-day suspension for failing to use three points of contact when

dismounting his truck); Ex. 9 (Mar. 28, 2014 Letter) (assessing a 2-day suspension for safety

violations he admitted).

      On April 27, 2016, while driving in the Philadelphia Terminal, Lowe observed White

sitting in a truck and talking on a cell phone.  Ex. 1 (White Dep.) 59:22-23.  Safety Rule A-34

states that "ISWs are prohibited from carrying personal cell phones, blackberry or other

electronic communication devices while conducting work activities on CSX Intermodal

Terminals, Inc. property. If phone communication is necessary, go to an office area and make the

---

[1] White's record also included a major offense which he admitted and which resulted in an 8-day
suspension in October 2014.  Ex. 22 (Oct. 6, 2014 Waiver).

necessary call." Ex. 10.  Lowe approached White.  Ex. 1 (White Dep.) 59:22-25.  White

admitted that he had been on his phone, and explained that his wife was having a medical

emergency.  *Id*. 59:25-60:1.  Lowe replied that White still should not have had his cell phone

with him.  *Id*. 60:1-3.

CSXIT subsequently charged White with violating Safety Rule A-34 (Ex. 11 (May 3,

2016 Charge Letter), and held a hearing on the charge.  Ex. 12 (June 2016 Hearing Transcript).

Jana Davies, a CSXIT manager who was based out of Chicago, served as the hearing officer.

*See id.*; Ex. 13 (Davies Decl.) ¶¶ 1-3.  During the hearing, White admitted that he violated Safety

Rule A-34 (*see* Ex. 12 at 26:26-35); his defense is that CSXIT should have made an exception to

the cell phone rule in his case.  *See* Opp. 18 (arguing that there were "certainly mitigating

circumstances surrounding Mr. White's cellphone use").  However, CSXIT did not make any

exceptions to this rule.  Ex. 1 (White Dep.) 69:2-6.

After the hearing, Davies reviewed the transcript and determined that White had violated

Safety Rule A-34.  Ex. 13 (Davies Decl.) ¶ 6; Ex. 4 (Griffin Decl.) ¶ 10.  She consulted with

Labor Relations Manager Liza Griffin about the discipline decision.  Ex. 13 (Davies Decl.) ¶ 6.

Given White's prior record, the Disciplinary Policy allowed for discipline "[u]p to Discharge."

*Id.*; *see also* Ex. 3 (Disciplinary Policy) at 4; Ex. 6 (Plaintiff's Disciplinary Record).  Instead,

Griffin and Davies suspended White for four days.  Ex. 13, (Davies Decl). ¶ 6; Ex. 4 (Griffin

Decl.) ¶ 10; Ex. 14 (4-Day Suspension Letter).  Neither Griffin nor Davies was aware that White

was Native American when this discipline decision was made.  Ex. 13 (Davies Decl.) ¶ 8; Ex. 4

(Griffin Decl.) ¶ 22.

## F.    White's Dismissal

On October 25, 2016, following an on-the-job accident, CSXIT Regional Safety Director

Arthur Jackson traveled to the Philadelphia Terminal to ensure that employees were complying

with safety rules.  Ex. 1 (White Dep.) 110:12-111:1.  Gomez accompanied Jackson as he traveled throughout the Terminal.  Ex. 15 (Jackson Decl.) ¶ 3.

As White was driving his work truck, he noticed Jackson approaching on foot.  Ex. 1 (White Dep.) 114:24-116:8.  White removed his seat belt and exited his vehicle.  *Id.* 116:23-117:1.  As he walked toward Jackson, White removed his work gloves to shake Jackson's hand.  *Id.* 117:11-16.  Jackson saw that White was wearing two wedding rings.  *Id.* 109:21-25, 119:9-10.  Safety Rule H-5(a) states: "Do not wear finger rings outside an office environment."  Ex. 16.  Jackson told White that he was not supposed to be wearing any wedding rings.  Ex. 1, White Dep. 109:18-110:3.  White responded that he had "just t[aken] off [his] glove."  *Id.*  Jackson reiterated that wedding rings could not be worn.  *Id.*  Jackson also stated that White had not been wearing his seat belt (*id.* 118:1-9), in violation of Safety Rule I-2.  Ex. 17 ("[o]ccupants of vehicle and equipment must use seatbelts/shoulder harness when provided").  White stated that he had been wearing his seat belt.  Ex. 1 (White Dep.) 118:10-13.

CSXIT subsequently charged White with violating the jewelry and seat belt rules (Ex. 18 (Nov. 2016 Charge Letter)), and held a hearing on the charges.  Ex. 19 (Dec. 2016 Hearing Transcript).  Skip Rice, a CSXIT Terminal Manager based out of Ohio, was the hearing officer.  *Id.*; Ex. 20 (Rice Decl.) ¶ 2.  Jackson and Gomez each testified that White was wearing wedding rings and was not wearing a seat belt when he should have been.  Ex. 19, 13:11-19, 5:27-40, 8:14-20.  White admitted that he was wearing a wedding ring, and testified that he "just forgot [he] had it on."  *Id.* 18:43-46, 20:9-24.  White also testified that he removed his seat belt, but did not do so until after his truck had come to a complete stop.  *Id.* 19:36-20: 4.

After the hearing, Rice reviewed the transcript and consulted with Labor Relations Manager Griffin about the discipline decision.  Ex. 20 (Rice Decl.) ¶¶ 5-6.  The two ultimately

determined that White was guilty of violating Safety Rule H-5(a) and I-2, and that, given

White's prior disciplinary record, dismissal was appropriate.  *Id.*; Ex. 4 (Griffin Decl.) ¶¶ 13-15.

CSXIT dismissed White effective December 29, 2016.  Ex. 21 (Dismissal Letter).

> ### G.    Treatment of Similarly-Situated Employees

CSXIT has dismissed at least five other employees who committed a minor offense while

at the final step of the Disciplinary Policy.  *See* Ex. 4 (Griffin Decl.) ¶¶ 18-19, Ex. A.  White

does not know of any employees who were not dismissed after committing a minor offense while

at the final step of the Disciplinary Policy.  Ex. 1 (White Dep.) 140:21-25.

> ### H.    White's EEOC Charge

On January 17, 2017, White filed a charge with the Equal Employment Opportunity

Commission ("EEOC") alleging that Defendants discriminated against him based on race, color,

and disability, and retaliated against him, by suspending him for using his cell phone, and by

dismissing him.[2]  Stip. Facts ¶ 11, Ex. 1 (Dkt. No. 22-1) (EEOC Charge).  White identified

January 2016 as the earliest date of discrimination and December 2016 as the latest.  *Id.*

> ### I.    White's Reinstatement

The CBA allows employees to challenge discipline assessed to them.  Ex. 5 (CBA) at

Rule 38.  If these claims are not resolved informally, they may be progressed to arbitration.  *Id.*

The TCU filed a claim regarding White's dismissal, seeking his reinstatement with back pay.

Ex. 4 (Griffin Decl.) ¶ 22. On March 27, 2019, the arbitrator issued her decision.  *Id.* Ex. B

(Arbitration Award).  She found that there was "substantial evidence" that Plaintiff violated both

Rules H-5(a) and I-2.  *Id.* at 3.  Nevertheless, in light of White's "16 years of service and

seniority," the arbitrator reinstated White without back pay, while, at the same time, warning him

---

[2] White's charge was dual-filed with the Pennsylvania Commission on Human Relations and with the Philadelphia Commission on Human Relations.  (Stip. Material Facts (Dkt. No. 22) ¶ 11.)

"that any future violation of a[ ] . . . safety rule . . . is not likely to be tolerated . . . , and may well be met with serious discipline, including dismissal." *Id.* at 4.

## II.    ARGUMENT

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) ("the mere existence of some factual dispute between the parties" in and of itself is not sufficient to defeat summary judgment; the dispute must concern a "fact[ ] that might affect the outcome of the suit"). Where, as here, the non-moving party bears the ultimate burden of proof, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party has met its burden, the nonmoving party may not rest on its pleadings, or on speculation and conjecture, but must set forth specific facts showing a genuine issue for trial. *Id*. at 324.

### A.    Most of Plaintiff's Claims Must Be Dismissed On Procedural Grounds

Plaintiff's EEOC charge and his Complaint focus on two discrete acts: his discipline for using a cell phone at work and his dismissal. Nevertheless, in opposing summary judgment, Plaintiff spends nearly half of his brief arguing whether various disciplinary actions taken against him in 2014 – four years before his Complaint and three years before his EEOC charge – were discriminatory. *See* Opp. 8-17. These claims must be dismissed because they were not timely raised and administrative remedies for them were not exhausted.

1.      **Plaintiff's claims regarding discipline assessed to him in 2014 were made for the first time in opposition to summary judgment.**

"It is well settled that the court need not consider" discrimination or retaliation claims that are raised for the first time in opposition to summary judgment. *See Johnson v. Cmty. Coll. of Allegheny Cty.*, 566 F. Supp. 2d 405, 449 (W.D. Pa. 2008) (citing *Aldinger v. Spectrum Control, Inc.*, 207 Fed.Appx. 177, 180 n. 1 (3d Cir.2006)).  Plaintiff's EEOC charge (Dkt. No. 22-1) and his federal court Complaint focused exclusively on actions that occurred in 2016: his discipline for using a cell phone at work and his dismissal.  *See also* Dkt. No. 22-1 (EEOC Charge) (identifying January 2016 as the earliest date that discrimination occurred).  Neither filing mentions his January 2014 counseling, or the suspensions that he received in February, March, or October of that year.  Claims regarding those disciplinary actions are not properly before this Court.

2.      **Plaintiff did not exhaust administrative remedies for claims challenging discipline assessed prior to 2016.**

Before filing claims under Title VII, the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Rights Act ("PHRA"), or the Philadelphia Fair Practices Ordinance ("PFPO"), a plaintiff must first exhaust administrative remedies for them by timely filing an administrative complaint.  *See Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 415 (3d Cir. 2010) (dismissing Title VII claim for failing to exhaust administrative remedies); *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 398 (E.D. Pa. 2002) (dismissing PHRA claim for failing to exhaust remedies); *Fleet v. CSX Intermodal, Inc.*, No. CV 17-3562, 2018 WL 1217156, at *5 (E.D. Pa. Mar. 8, 2018) ("[C]ourts within our district and the Pennsylvania Commonwealth Court require exhaustion under the PFPO."); *Ballard v. Mastery Charter Sch.*, No. 12-2418, 2012 WL 6562783, at *3 (E.D. Pa. Dec. 14, 2012) (Rufe, J.) (dismissing ADA claim that was not properly exhausted); *see also McInerney*, 244 F. Supp. 2d at

398 (exhaustion requirements are "strictly construed and enforced").  Plaintiff has not done so

with respect to his pre-2016 claims.  Dkt. No. 22-1 (EEOC charge) (complaining only of his

discipline for using a cell phone and of his dismissal).  Those claims should all be dismissed.

### 3.  Plaintiff's FMLA claims regarding discipline assessed before 2016 are time-barred.

The FMLA does not have an administrative exhaustion requirement.  However, to the

extent that Plaintiff claims that any of his 2014 discipline was in retaliation for taking FMLA

leave, those claims are time-barred.  FMLA claims are subject to a two-year statute of

limitations, which extends to three years in the case of willful violations.  *See* 29 U.S.C.

§ 2617(c).  White's Complaint was not filed until February 2018.  Accordingly, any FMLA

claims challenging discipline assessed to White prior to 2016 are time-barred.

### B.  Plaintiff Cannot Establish that Defendants Discriminated or Retaliated Against Him

Plaintiff brings claims under 42 U.S.C. § 1981 ("Section 1981"), Title VII, the ADA, the

PHRA, and the PFPO alleging that Defendants discriminated against him because of his race,

color, national origin, and his wife's disability by suspending him for violating the cell phone

rule and by dismissing him for other safety violations.  Plaintiff also alleges that the same

discipline was in retaliation for using FMLA leave and for engaging in unspecified protected

conduct under Title VII, the ADA, and state and city anti-discrimination laws.  These claims all

fail.

Discrimination claims under Section 1981, the ADA, the PHRA, and the PFPO are all

governed by the same standards that apply to Title VII claims.  *See Connelly v. Lane Const.*

*Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (interpreting plaintiff's Title VII and PHRA "claims in

the singular, as they are governed by essentially the same legal standards"); *Newman v. GHS*

*Osteopathic, Inc.*, 60 F.3d 153, 157-58 (3d Cir. 1995) (Title VII standards and methods of proof

apply to ADA claims); *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 650 (E.D. Pa. 2012), *aff'd*, 565 F. App'x 88 (3d Cir. 2014) (analyzing Section 1981 claims consistently with Title VII); *Joseph v. Cont'l Airlines, Inc.*, 126 F. Supp. 2d 373, n.3 (E.D. Pa. 2000) (analyzing Section 1981 and PFPO claims consistently with Title VII).  Where, as here, there is no direct evidence of discrimination, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03 (1973) is applied.  *See Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 410 (3d Cir. 1999).  The same framework applies to FMLA retaliation claims.  *See Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 151 (3d Cir. 2017).

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case by showing that (1) he is a member of a protected class; (2) he is qualified for the position; (3) he was subject to an adverse employment action; (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination.  *Ruff v. Temple Univ.*, 122 F. Supp. 3d 212, 217 (E.D. Pa. 2015).  If the plaintiff does so, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *Id.*  Upon doing so, the burden shifts back to the plaintiff to prove that the nondiscriminatory explanation is merely a pretext for discrimination.  *Id.*  Despite this back-and-forth, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981).

### 1.    Plaintiff cannot establish that his 4-day suspension was discriminatory or retaliatory.

CSXIT suspended Plaintiff for four days because he violated Safety Rule A-34 by carrying and using his personal cell phone at work.  Ex. 14 (4-Day Suspension Letter).  Violating safety rules is a legitimate, non-discriminatory reason for discipline.  *See Vaughan v. Boeing Co.*,

229 F. Supp. 3d 339, 348 (E.D. Pa. 2017), *aff'd*, 733 F. App'x 617 (3d Cir. 2018). Accordingly, the onus is on Plaintiff to show that these reasons were pretext for discrimination.

To establish pretext, a plaintiff must put forth evidence from which a factfinder "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). A plaintiff "cannot simply show that the employer's decision was wrong or mistaken"; he must show that it was discriminatory. *Id.* at 765. The Third Circuit has called this a "difficult burden" (*id.*), and it is one that Plaintiff cannot satisfy.

### a.    Plaintiff admits violating the rule on cell phones.

A plaintiff cannot show that his employer's stated reason for disciplining him was false when he admits misconduct. *See Norman v. Kmart Corp.*, 485 F. App'x 591, 593 (3d Cir. 2012) ( "[B]ecause [Plaintiff] admits to the violations she committed, she cannot show that [employer's] reason [for disciplining her] was false."). That is the case here. Safety Rule A-34 prohibits ISWs "from carrying personal cell phones . . . while conducting work activities on CSX Intermodal Terminals, Inc. property," and instead requires ISWs to "go to an office area" to make any necessary phone calls. Ex. 10. White admits that he carried his cell phone with him in his work truck; that he took a call on that phone while he was at work; and that he was not supposed to do either of those things. Ex. 1 (White Dep.) 59:10-60:5; *see also id.* 62:25-63:5 (White admitting that ISWs were not allowed to carry cell phones with them); *id.* 66:19-21 (White admitting that he had not received permission to carry his cell phone with him in his truck); *id.* 78:7-79:6 (White does not dispute the substance of the charges that led to his suspension); Opp. 18 (referring to White's cell phone use as "a minor rule violation"). His rule violation is not disputed.

Nevertheless, in an effort to muddy the waters, White argues that "CSX employees are allowed to take calls when in one of the trailers," and that "management and approved personal [sic] are allowed to carry and use cell-phones at their discretion." (Opp. 17.) These arguments have no merit. White was in his truck – not in a trailer – when he took the call from his wife. *See* Ex. 1 (White Dep.) 78:25-79:6. In addition, Safety Rule A-34 – the rule that White was suspended for violating – does not apply to managers (*id.* 70:11-18), and White admittedly was never approved to carry or use a cell phone at work. *Id.* 66:19-21. White's arguments are a red herring.

>   **b.    White's 4-day suspension was consistent with the disciplinary policy and with discipline assessed to similarly-situated employees**

Evidence that discipline was consistent with company policy tends to undermine any claim that the discipline was discriminatory. *See, e.g.*, *Mease v. Wilmington Tr. Co.*, 726 F. Supp. 2d 429, 439 (D. Del. 2010) (no pretext where termination was consistent with the disciplinary policy). Such is the case here.

When White violated Safety Rule A-34, he was already at the fourth and final step of the progressive discipline policy. Ex. 6 (Plaintiff's Disciplinary Record). His violation was therefore grounds for dismissal. (Ex. 3 (Disciplinary Policy).) Instead, CSXIT assessed only a 4-day suspension. This lenient treatment belies Plaintiff's discrimination and retaliation claims.

Ignoring these facts, Plaintiff claims that his suspension was inconsistent with the Disciplinary Policy, because it states that, for minor offenses, "[t]he focus is on positive corrective action, not punishment." (Opp. 18.) This claim has no merit. Although the policy affords managers the discretion to handle minor violations with counseling, managers are not required to do so. *See* Ex. 3 (Disciplinary Policy) (Terminal Management have "discretion regarding how best to handle minor issues"). Indeed, the policy also provides that "repeated

violations of the rules may require . . . discipline with each succeeding offense" (*id.* at 2), and

establishes a progressive discipline system for minor offenses.  *Id.* at 4.  In practice, moreover,

CSXIT does not always counsel employees for minor offenses.  *See* Ex. 4 (Griffin Decl.) ¶¶ 18-

19, Ex. A (examples of other CSXIT employees dismissed for committing a minor offense while

at the final step of the progressive discipline policy).  Plaintiff's four-day suspension was not an

outlier.

> ### c.  Plaintiff has not identified any similarly-situated employees who were treated better than him.

A plaintiff can establish pretext through evidence of disparate treatment.  In order to do

so, however, the comparators must be similarly-situated.  *See Moore v. Shinseki*, 487 F. App'x

697, 698 (3d Cir. 2012).  Employees who are at different steps of a progressive discipline system

are not similarly situated.  *See Alinoski v. Musculoskeletal Transplant Found., Inc*., 679 F. App'x

224, 226 (3d Cir. 2017).

Here, Plaintiff alleges that "his similarly situated co-workers were caught using or

carrying cell phones during work and received verbal counseling without formal discipline . . . ."

(Opp. 19.)  This allegation is based solely on Plaintiff's testimony that "a few" other ISWs were

caught using a cell phone at work, and that those employees (whose names Plaintiff could not

recall) were counseled but not disciplined.  Ex. 1 (White Dep. 70:19-71:8).  Critically, however,

White admits that he does not know anything about the prior disciplinary record of any of these

individuals.  *Id*. 71:1-19.  Accordingly, White cannot show that any of these individuals were

similarly situated to him, as he must to prove discrimination.

White's claim that "[i]t was common for employees to carry their phones with them

every day" (Opp. 18; Ex. L (Dkt. No. 25-8) ¶ 38) and that Defendants did not do anything about

it likewise does not establish discrimination.  White testified that he knew of only "a few" other

ISWs who, like him, were actually caught using a cell phone at work, and all of them were at least counseled.  (White Dep. 71:1-19.)  Accordingly, to the extent that White's declaration suggests that Defendants did not do anything to enforce the cell phone rule, his testimony is inconsistent with the testimony that he gave at his deposition, and should be disregarded.  *See Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004) ("A party may not create a material issue of fact by filing an affidavit disputing his or her own testimony without demonstrating a plausible explanation for the conflict.").

> **d.    Plaintiff's claim that his rule violation involved "mitigating circumstances" does not establish pretext.**

Plaintiff next argues that "[t]here were certainly mitigating circumstances surrounding his rule violation which, in his view, should have been taken into account and were not.  This argument fails.  The Court's job is to decide whether discipline was discriminatory and not whether it was fair.  *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("an employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason"); *Fuentes*, 32 F.3d at 765 (issue in a discrimination case is "whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent"); *see also McCoy v. WGN Cont'l Broad Co.*, 957 F.2d 368, 373 (7th Cir. 1992) (court does not function as a "super-personnel department" that reexamines an employer's business decisions).  Plaintiff admits that CSXIT did not make any exceptions to its rule prohibiting ISWs from carrying or using a cell phone at work:

Q.    . . . Do you know of any ISWs who were allowed to carry a cell phone at work?

A.    None.

Q.    There were no exceptions to the rule?

A.    None.

Ex. 1 (White Dep) 69:2-6.  In addition, CSXIT did not have any legal duty to accommodate the medical needs of Plaintiff's wife, a non-CSXIT employee.[3]  *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 510 (3d Cir. 2009).  Accordingly, while Plaintiff may quibble with whether his suspension was fair, he cannot show that it was discriminatory.

> ### e.    The pre-hearing emails are not evidence of discrimination

Plaintiff also claims that emails exchanged between Lowe, Davies (the hearing officer), and Griffin (the Labor Relations manager) prior to his hearing are evidence of discrimination. They are not.  Plaintiff makes much of the fact that Davies asked to talk with Griffin about "how to disallow" testimony from Plaintiff's wife.  (Opp. 18-19.)  It is evident from Davies' earlier email, however, that these discussions were prompted by her belief that Plaintiff's wife did not have anything relevant to say, and not by any discriminatory motive.  *See* Ex. 23 (May 2016 Email Chain) ("Do we have to allow all that?  Nothing they say has anything to do with [White] breaking a safety rule.").  Indeed, after consulting with Labor Relations, Davies ultimately decided to allow Plaintiff's wife to testify on Plaintiff's behalf.  *See* Ex. 19 at 27:3-33:13.  She would not have done so if she were simply trying to stack the deck against Plaintiff.

Moreover, even if any of these emails could be read to suggest some sort of nefarious purpose, there is no evidence that it had anything to do with White's race, color, national origin, or his wife's disability.  Indeed, neither Griffin nor Davies even knew that White was Native American when they decided to suspend him (Ex. 4 (Griffin Decl.) ¶ 23; Ex. 13 (Davies Decl.) ¶ 8) and White never heard Lowe or any other CSXIT manager say anything negative about Native Americans (Ex. 1, White Dep. 42:19-44:16).[4]  These emails and the other evidence on which

---

[3] Although not legally obligated to provide an accommodation to Plaintiff, CSXIT had a process in place by which outside parties could contact ISWs while they were working.  *See* White Dep. 74:21-77:8.

[4] Plaintiff's claim that Lowe made "smug" facial expressions when White talked about being Native American cannot prove discriminatory animus.  *See Yu v. McGrath*, No. 11-cv-5446, 2014 WL 1276244, at *12

Plaintiff relies cannot prove discrimination or retaliation. His claims regarding his 4-day suspension should be dismissed.

### 2. Plaintiff cannot establish that his dismissal was discriminatory or retaliatory.

CSXIT dismissed White pursuant to its progressive disciplinary policy for violating safety rules prohibiting employees from wearing rings outside of an office environment (Rule H-5(a)) and requiring employees to wear seat belts (Rule I-2). *See* Ex. 21 (Dismissal Letter). Plaintiff cannot show that these reasons were pretext for discrimination.

### a. Plaintiff admits that he violated the written rule on jewelry.

CSXIT prohibits employees from wearing finger rings outside of an office environment. Ex. 16 (Rule H-5(a)). Plaintiff admits that, while he was outside working, he wore two wedding rings, which were noticed when he removed his work gloves. Ex. 1, White Dep. 109:6-25, 119:9-11. It is undisputed that he violated Safety Rule I-2.

### b. Plaintiff has not shown disparate treatment or otherwise rebutted CSXIT's evidence of equal treatment.

Although he admits violating the written rule on jewelry, White nevertheless argues that it was discriminatory for CSXIT to dismiss him for it, because employees were supposedly allowed to wear wedding rings under their work gloves, and because he was "the first employee in the history of CSX Intermodal Terminals to receive a write-up for wearing his wedding ring." (Opp. 19-20.) This argument has no merit.

Whether an employee was the first one who was disciplined for a specific type of misconduct in and of itself cannot prove discrimination. *Walden v. Saint Gobain Corp.*, 323 F.

---

(D.N.J. Mar. 27, 2014), *aff'd*, 597 F. App'x 62 (3d Cir. 2014) ("Plaintiff's subjective interpretation of [his manager]'s body language and facial expressions is insufficient as a matter of law to create a genuine issue of material fact to be decided by a jury.").

Supp. 2d 637, 643 (E.D. Pa. 2004) (Rufe, J.).  Rather, to prove discrimination, the employee

must show that he was treated differently than similarly-situated employees.  *Id.* (plaintiff's

failure to identify any similarly-situated individuals who were treated more favorably was the

"major and ultimately fatal deficiency" in his case).

      Here, Plaintiff argues that he was the only one who was ever disciplined or fired for

violating the rule on jewelry.  However, Plaintiff does not know of anyone other than himself

who was ever observed outside of an office environment wearing wedding rings; the other

employees who wore them always kept them hidden under their gloves.[5]  Ex. 1, White Dep.

180:22-25; *see also id.* 179:5-13 (other employees wore wedding rings at work but kept them

hidden by gloves "[a]ll the time"); *id.* 172:12-23 ("Everybody knew that once they left that ISW

trailer to put on gloves").  Moreover, although some managers did not care if wedding rings were

worn under gloves, Regional Safety Director Jackson – the manager who directed that Plaintiff

be charged for the jewelry violation (Ex. 15 (Jackson Decl.) ¶ 4; Ex. 24 (Gomez Dep.) 62:22-

63:1, 90:10-18) – was not one of those managers (Jackson Decl. ¶ 5), and there is no evidence

that he or anyone else ever actually saw an employee with wedding rings exposed and simply

ignored it.  Plaintiff has not identified any similarly-situated employees who were treated better

than him.

      By contrast, CSXIT has identified five employees besides Plaintiff who were dismissed

for committing a minor offense while at the final step of the progressive discipline policy.  Ex. 4

(Griffin Decl.) ¶¶ 18-19, Ex. A.  Plaintiff attempts to sweep these examples under the rug,

arguing that they are irrelevant because they did not work in the Philadelphia Terminal.  (Opp.

---

[5] Although Plaintiff now claims that he was wearing his wedding rings because management had effectively authorized him and other employees to wear them under their work gloves, he testified at the hearing on the charges that he "just forgot [he] had [his rings] on."  Ex. 19 at 20.  He did not say anything about management allowing employees to wear wedding rings.  Plaintiff has never explained this inconsistency.

22.)  Regardless of where they worked, however, they were subject to the same safety rules and to the same disciplinary policy as Plaintiff.  Ex. 4 (Griffin Decl.) ¶ 20.  Accordingly, in determining whether Plaintiff was treated consistent with the disciplinary policy, it is entirely appropriate to look at these employees.  Plaintiff has not shown disparate treatment.

### c.    Plaintiff's denial that he committed the seat belt violation cannot establish pretext.

The question in a discrimination case is not whether the plaintiff committed misconduct but rather whether the decision-makers honestly believed that he did.  *See Boyle v. Penn Dental Med.*, 689 F. App'x 140, 144-45 (3d Cir. 2017); *Capps*, 847 F.3d at 154-55.  Accordingly, a plaintiff's denial of misconduct is not sufficient to survive summary judgment.  *See Capps*, 847 F.3d at 154-55 (employer's honest but possibly mistaken belief that employee misused FMLA leave was grounds for summary judgment on retaliation claim); *see also Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) ("[t]he fact that an employee disagrees with an employer's evaluation of him does not prove pretext").

Plaintiff maintains that he did not remove his seat belt until after his vehicle came to a complete stop and was parked.  Ex. 1 (White Dep.) 106:16-17.  He does not dispute, however, that Jackson and Gomez have both consistently testified otherwise.  *See* Ex. 19 at 5:34-35 (Gomez: "we observed Mr. White not wearing his seatbelt"); *id.* at 13:11-16 (Jackson testifying that he saw Mr. White without his seat belt on).  And, to the extent that Plaintiff claims that either Jackson or Gomez lied about seeing him with his seat belt on (as opposed to simply being mistaken about it), he has not offered any evidence that either of them did so because of his race, color, national origin, wife's disability, or use of FMLA leave.  *See, e.g.*, Ex. 1 (White Dep.) 142:4-6 (Gomez never discriminated against White); *id.* 43:20-44:8 (Gomez was "very" respectful of his Native American heritage and culture).  Plaintiff also has not shown that either

of the two managers involved in the decision to dismiss him – Rice or Griffin – did not honestly believe that he had committed the seat belt violation, or that either of them discriminated against him.  His discrimination and retaliation claims fail.

### d.    The hearing officer's initial finding that the seat belt violation was neither proved nor disproved does not establish pretext.

After the hearing, the hearing officer (Rice) issued findings in which he concluded that White violated the jewelry rule and, in light of his prior record, should be dismissed for doing so, but that "[t]here is to [sic] much ambiguity and [sic] between the charging officer and company witness to determine if the Principal was wearing his seat belt or not."  Ex. 25 (Hearing Officer's Findings).  Focusing only on the findings regarding the seat belt charge, White argues that his dismissal was not justified and could have resulted only from discrimination.  (Opp. 21.)  This argument has no merit.

Initially, as the hearing officer noted from the outset, given Plaintiff's prior disciplinary record, the jewelry violation alone was grounds for dismissal.  Ex. 25.  Accordingly, even if the hearing officer had stuck by his initial conclusion that the evidence was too ambiguous to draw a conclusion on the seat belt charge, CSXIT would have been justified in terminating Plaintiff's employment.  In this case, however, after further discussions with Labor Relations, the hearing officer ultimately agreed that White violated the rule requiring seat belts.[6]  Ex. 20 (Rice Decl.)

---

[6] The hearing officer's initial reluctance to make a decision one way or another on the seat belt charge was based on his belief that it was unclear whether Gomez was present for Jackson's discussion with White, in which Jackson first raised the seat belt violation.  *See* Ex. 20 *(*Rice Decl.) ¶ 5.  As Labor Relations Manager Griffin explained to Rice, however, whether Gomez was present for this discussion has no bearing on whether either Gomez or Jackson actually saw White without his seat belt on, the question that Jackson was supposed to be deciding.  *Id.* ¶ 6.  Jackson ultimately agreed with Griffin that the evidence was sufficient to prove that White had violated the seat belt rule (*id.*), and a neutral arbitrator, in turn, agreed with both of them.  *See* Ex. 4 (Griffin Decl.) Ex. B at 3 (finding that seat belt violation was proven).

¶¶ 5-6.  As a result, CSXIT was entirely justified in dismissing Plaintiff for both rule violations, and its doing so was neither discriminatory nor retaliatory.

### e. The emails on which Plaintiff relies are not evidence of discrimination or retaliation.

Plaintiff argues that several emails that were sent after managers witnessed the rule violations but before he was charged are evidence of discrimination.  (Opp. 20-21.)  He is wrong.  In fact, the emails demonstrate the exact opposite: that CSXIT did not single out White.  For example, on the same night that Jackson and Gomez observed White's violations, they also observed four other employees commit violations.  *See* Ex. 26 (Oct. 2016 Email Chain).  Lowe subsequently stated that he was "pretty sure the only charges will be Brian White and John Fleet" (Opp. 17), which White claims is proof that he was targeted.  It is clear from the context of Lowe's email, however, that his statement was based on his belief as to where each of the employees stood under the disciplinary policy.  *See* Ex. 26 ("Need to know where the below employees fall in the disciplinary process.  Should we be issuing counsel letters or charge letters for the following (I'm pretty sure the only charges will be Brian White and John Fleet)").  Indeed, the discipline that was ultimately assessed was consistent with the employee's standing under the disciplinary policy.  Dave Brandon, for example, was cited for a seat belt violation on the same night as White, but received only a 1-day suspension because he was at Step 2 of the policy whereas White was at Step 4.  *See id*. (noting that Dave Brandon is at Step 2); Ex. 27 (Brandon Charge and Waiver Letters).  White's dismissal resulted from his poor disciplinary record and not from discrimination or retaliation.[7]

---

[7] White also argues that Lowe's email indicating that White "is on Step 4," and that "[w]e do not intend to offer a waiver" is evidence of discrimination.  (Opp. 20.)  It is not.  White does not identify any employees similarly situated to him who were offered a waiver while at the fourth and final step of the progressive discipline policy.  Nor has White produced any evidence that Lowe's statement had anything to do with White's race, color, national origin, use of FMLA leave, alleged protected conduct, or his wife's medical condition.

f.    **Plaintiff's reinstatement through arbitration does not establish that the discipline decision was discriminatory or retaliatory.**

Plaintiff will likely argue that his recent reinstatement through the arbitration process proves that his discipline was discriminatory. This argument likewise fails. The question in arbitration is whether the discipline was justified and not whether it was discriminatory. Ex. 4 (Griffin Decl.) ¶ 21. Accordingly, even if the arbitrator had found that the charges against Plaintiff were not proven, it would not prove discrimination. In Plaintiff's case, however, the arbitrator concluded that Plaintiff committed both of the violations for which he was dismissed; Plaintiff's dismissal was converted into what was effectively a two-year unpaid suspension only because of his "16 years of service and seniority." *See id.* Ex. B. Nevertheless, the arbitrator did not cite any examples of employees with records similar to Plaintiff's who committed the same offense and who were not dismissed, and Plaintiff has not provided any either. Plaintiff's reinstatement does not prove that his discipline was discriminatory or retaliatory.

g.    **Plaintiff's prior testimony and other evidence undermines his FMLA retaliation claim.**

Plaintiff alleges that his dismissal and his other discipline was in retaliation for using FMLA leave. This claim has no merit. Plaintiff himself admitted during his deposition that he used FMLA leave for years and was not disciplined for it (Ex. 1 (White Dep.) 53:8-25, 58:6-8); that CSXIT allowed him to use FMLA leave whenever he requested it (*id.* 53:19-21); that neither Lowe nor Gomez ever said anything negative about his FMLA leave (*id.* 55:14-16, 56:12-57:9); and that nobody ever took any action against him for using FMLA leave.[8]  *Id.* 58:6-8. In addition, although Plaintiff now claims that he "reported discrimination and harassment . . .

---

[8] In opposition to summary judgment, Plaintiff submitted a declaration in which he alleges – contrary to his deposition testimony – that Lowe was angry about his use of FMLA leave and repeatedly tried to obstruct it. This testimony is contrary to his earlier sworn deposition testimony, and should be disregarded on that basis. *See Baer*, 392 F.3d at 624.

based upon Jonathan Lowe's conduct and comments to [him] about . . . [his] decision to use the FMLA to help care for [his] wife" (Opp. 23), that alleged complaint was made in March 2014, more than two years before Plaintiff's 4-day suspension and nearly three years before his dismissal. This lengthy gap between his complaint and his discipline further undermines his retaliation claim. *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, n.8 (3d Cir. 2017) (two-month gap between protected conduct and adverse action was too long to infer causation). No reasonable juror could find in Plaintiff's favor on any of his claims regarding his dismissal. Summary judgment is warranted on all of them.

### C.    The Claims Against Lowe and Gomez Should Be Dismissed

In addition to suing his former employer, Plaintiff also sues two of his former managers—Lowe and Gomez. These claims should be dismissed.

First, White testified at his deposition that Gomez never personally discriminated against him. Ex. 1 (White Dep.) 142:4-6 ("Q: Do you believe that Ryan Gomez ever personally discriminated against you? A. No, not per se, no."), 43:15-19 (White did not have any problems with Gomez). White reports that Gomez was "very" respectful of White's Native American culture, and never said anything bad about Native Americans. *Id*. 43:20-44:8. White also had "no problem whatsoever" with how Gomez handled White's FMLA leave, *id*. 57:7-9, and does not believe that Gomez ever discriminated against him for using FMLA leave. *Id*. 57:25-58:5. His frivolous claim against Gomez should be dismissed.

Second, White's claims against the individual defendants require proof that each of them were personally involved in the discrimination with "some affirmative link to causally connect the actor with the discriminatory action." *See Fleet v. CSX Intermodal, Inc.*, No. CV 17-3562, 2018 WL 3489245, at *18 (E.D. Pa. July 18, 2018). Neither Lowe nor Gomez was involved in the ultimate decision to suspend or dismiss White; those decisions were made by the hearing

officer and by Griffin.  *See* Ex. 4, Griffin Decl. ¶ 17; Ex. 13, Davies Decl. ¶ 7; Ex. 20, Rice Decl. ¶ 7.  And, although Lowe charged Plaintiff with the cell phone violation and Gomez testified against Plaintiff with respect to the wedding ring and seat belt violations, there is no evidence that either of them did so for discriminatory or retaliatory reasons.

Finally, Plaintiff attempts to hold Gomez and Lowe liable under a theory that they aided and abetted discrimination.  43 Pa. Stat. Ann. § 955(e); Phila., Pa. Code § 9-1103(1)(h).  However, to establish an aiding and abetting claim, plaintiffs must be able to prove discrimination, *see Lombard v. Lassip, Inc*., No. CV 17-964, 2017 WL 6367956, at *5 (E.D. Pa. Dec. 13, 2017), and White cannot do so.  Lowe and Gomez could not have aided or abetted discrimination that did not occur.  *See Fleet v. CSX Intermodal, Inc*., 2018 WL 3489245, at *19.

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its Motion for Summary Judgment, enter judgment in its favor and against Plaintiff, and dismiss with prejudice Plaintiff's Complaint.

Dated: April 18, 2019                        Respectfully submitted,


                                             */s/ Thomas R. Chiavetta*
                                             Thomas R. Chiavetta
                                             JONES DAY
                                             51 Louisiana Ave., N.W.
                                             Washington, D.C. 20001
                                             (202) 879-3939 (Telephone)
                                             (202) 626-1700 (Facsimile)
                                             tchiavetta@jonesday.com

                                             James S. Urban
                                             Sarah L. Thompson
                                             JONES DAY
                                             500 Grant St., Suite 3100
                                             Pittsburgh, PA 15219
                                             (412) 394-7906 (Telephone)
                                             (412) 394-7959 (Facsimile)

jsurban@jonesday.com

Attorneys for Defendants

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 18th of April 2019, a copy of the foregoing Defendants CSX

Intermodal Terminals, Inc., Jonathan Lowe, and Ryan Gomez's Reply Memorandum of Law in

Support of Motion for Summary Judgment was served via the Court's Case

Management/Electronic Case Files (CM/ECF) System on the following:

        Seth Carson, Esq.
        DEREK SMITH LAW GROUP, PLLC
        1845 Walnut Street, Suite 1601
        Philadelphia, Pennsylvania 19103
        (215) 391-4790

        *Attorney for Plaintiff*

        */s/ Thomas R. Chiavetta*
        Thomas R. Chiavetta